| | | |
|---|---|---|
| WILLIETTE PRICE, on behalf of herself and all persons similarly situated, | ) ) ) | |
| | ) | No. 11 C 04463 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| | ) | Judge Edmond E. Chang |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, et al., | ) ) ) | |
| Defendants. | ) | |
| | | |
| CHERYL SMITH, | ) ) | |
| Plaintiff, | ) | No. 11 C 04974 |
| | ) | |
| v. | ) ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) ) ) | |
| Defendant. | ) ) | |
| | | |
| BARBARA FERKEL and ADRIENNE GREEN-KATIEN, individually and on behalf of all similarly situated persons, | ) ) ) | |
| | ) | No. 11 C 09322 |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Williette Price, Cheryl Smith, Barbara Ferkel, and Adrienne Green-Katien filed three separate lawsuits on behalf of themselves and a proposed class of similarly situated Chicago Public School teachers against the Chicago Board of Education alleging, among other things, violations of due process under 42 U.S.C. § 1983. *Price v. Board of Education, et al.*, No. 11 C 4463; *Smith v. Board of Education*, No. 11 C 4974; *Ferkel v. Board of Education, et al.*, No. 11 C 9322. Plaintiffs are tenured Chicago Public School (CPS) teachers who were laid off and "honorably dismissed" in the summer of 2010 as part of the Board's response to a fiscal crisis. Plaintiffs allege that, as tenured teachers, they had a constitutionally protected property interest in continued employment, and that the Board deprived them of this property interest in violation of the Due Process Clause by summarily dismissing them without individualized determinations of their qualifications, certifications, experience, and performance ratings. *See, e.g.*, *Ferkel* R. 5, Ferkel 1st Am. Compl.[1] The Board now moves to dismiss the due process claims under Federal Rule of Civil Procedure 12(b)(6). *Price* R. 63, Price Mot. Dismiss; *Smith* R. 13, Smith Mot. Dismiss; *Ferkel* R. 19, Ferkel Mot. Dismiss. Because the Board's arguments are basically the same in all three cases, this opinion will address all three motions, and the same opinion will be entered in each of the three cases. For the reasons explained below, the Board's motions are granted.

---

[1]Citation to the docket is "R." followed by the docket entry. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

# I. Background

In evaluating a motion to dismiss, the Court must accept as true the complaints' factual allegations and draw reasonable inferences in Plaintiffs' favor. *Ashcroft v. al-Kidd*, ⸺ U.S. ⸺, 131 S. Ct. 2074, 2079 (2011). Plaintiffs Williette Price, Cheryl Smith, Barbara Ferkel, and Adrienne Green-Katien were tenured Chicago Public School teachers. *Price* R. 62, Price 1st Am. Compl. ¶¶ 13-14; *Smith* R. 1, Smith Compl. ¶ 11; Ferkel 1st Am. Compl. ¶ 2. On June 15, 2010, in response to a mounting fiscal crisis, the Board passed a resolution authorizing the "honorable termination" of tenured teachers. *See* Smith Compl. ¶ 17. Soon after, Plaintiffs were informed that they would be laid off and honorably dismissed. *Id.* ¶ 18; Ferkel 1st Am. Compl. ¶ 41; Price 1st Am. Compl. ¶ 9. Plaintiffs, along with over 1,200 other tenured CPS teachers, were laid off without first being given notice of existing vacancies within the CPS system or an opportunity to show that they were qualified to fill those vacancies. *See* Price 1st Am. Compl. ¶ 15. Plaintiffs sued the Board, alleging that the Board's failure to provide proper pre-layoff procedures—namely, an individualized hearing on each teacher's qualifications for existing vacancies—constituted a violation of their right to due process, because, as tenured CPS teachers, they had a property interest in continued employment. *See id.* at 5-6; *Smith* Compl. at 9-10; *Ferkel* 1st Am. Compl. at 12-13. The Board now moves to dismiss.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are

4

entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

The Board advances two independent reasons in support of its motions to dismiss. First, the Board contends that the claims are barred by claim preclusion. Second, even if claim preclusion does not sink the case, the Board says that dismissal of the due-process claims is warranted because Plaintiffs have failed to identify a constitutionally protected property interest, and thus have failed to state a claim upon which relief can be granted. *See Price* R. 64, Price Defs.' Br. at 1; *Smith* R. 13, Smith Def.'s Br. at 1; *Ferkel* R. 19, Ferkel Defs.' Br. at 2. The Court will address each of these arguments in turn.

## A. Claim Preclusion

The Board argues that Plaintiffs' due-process claims are barred by claim preclusion because Plaintiffs are asserting essentially the same claims that their union, the Chicago Teachers Union (CTU), unsuccessfully pursued in *Chicago Teachers Union v. Board of Education*, No. 10 C 4852. The doctrine of claim preclusion requires a party to join in a single lawsuit all legal and remedial theories that concern the same nucleus of operative facts. *See Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). The doctrine "protects [litigants] from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). A party asserting claim preclusion in a

later action must establish (1) identity of the claim; (2) identity of the parties, which includes those in "privity" with the original parties; and (3) a final judgment on the merits. *Ross*, 486 F.3d at 283. Although claim preclusion is an affirmative defense that need not be anticipated by the complaint, claim preclusion may provide grounds for dismissal under Rule 12(b)(6) where a plaintiff has pled herself out of court by establishing in the complaint facts that prove the defense. *Novickas v. Proviso Twp. High Sch.*, 2010 WL 3515793, at *2 (N.D. Ill. Aug. 31, 2010) (citing *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008)).

To evaluate the claim-preclusion argument, a comparison is needed between the CTU case and this case, so a brief overview of the CTU proceedings is warranted.

### 1. CTU Case

Beginning in June 2010, the Board laid off nearly 1,300 of its teachers to close a massive budget deficit for the 2011 fiscal year. Price Defs.' Br. at 2. In August 2010, the Chicago Teachers Union filed a lawsuit on behalf of its members in response to the economic layoffs, asserting a variety of federal and state claims against the Board, seeking injunctive relief, reinstatement, and a boilerplate catch-all request for "any other such relief as may be required." 10 C 4852, R. 1 ¶ 73(c). The CTU asserted, among other things, that the Board had deprived tenured teachers of their Fourteenth Amendment right to due process by not affording them an opportunity to be retained to fill existing vacancies within the CPS system before they were laid off. *Id.* ¶¶ 4, 50, 69, 71. Specifically, the CTU alleged that section 34-18(31) of the Illinois School Code gave tenured teachers a right to individualized determinations as to whether they were

qualified to be retained or reassigned to other positions in preference to others. The CTU argued that the Board's failure to comply with the requirements of section 34-18(31) constituted a deprivation of property without due process of law. *Id.* ¶¶ 50, 67, 68, 84.

The CTU moved for preliminary and permanent injunctive relief on its due process claims. In October 2010, the district court granted the CTU's motion and awarded injunctive relief, holding that section 34-18(31) of the School Code gave laid-off tenured teachers a property interest and right to some sort of retention procedure. *Chicago Teachers Union v. Bd. of Educ.*, 2010 WL 3927696, at *6 (N.D. Ill. Oct. 4, 2010). The district court further ordered the Board to promulgate recall rules in accordance with section 34-18(31) that would give laid-off tenured teachers "an opportunity . . . to be considered for vacancies within the school system." *Id.* at *9.

The Board appealed to the Seventh Circuit, which eventually certified the following questions of law to the Illinois Supreme Court:

1. Does section 34-84 [of the Illinois School Code] give laid-off tenured teachers either (1) the right to be re-hired after an economic layoff, or (2) the right to certain procedures during the rehiring process? If so, what is the scope of that right?

2. Does section 34-18(31) [of the Illinois School Code] or the limits it places on the Board's discretion give laid-off tenured teachers either (1) the right to be rehired after an economic layoff, or (2) the right to certain procedures during the rehiring process? If so, what is the scope of that right?

3. [W]hen read in combination do [sections 34-84 and 34-18(31)] give [laid-off tenured] teachers either (1) the right to be rehired after an economic layoff, or (2) the right to certain procedures during the rehiring process? If so, what is the scope of that right?

7

*Chicago Teachers Union v. Bd. of Educ.*, 662 F.3d 761, 764-65 (7th Cir. 2011).

The Illinois Supreme Court responded 'no' to all three questions and held that laid-off tenured teachers do *not* have a property right to continued employment under either section 34-84 or section 34-18(31). *Chicago Teachers Union v. Bd. of Educ.*, 963 N.E.2d 918, 924-27 (Ill. 2012). In light of the Illinois Supreme Court's answer, the Seventh Circuit reversed the judgment of the district court and remanded the case with instructions to vacate the preliminary and permanent injunctions. *Chicago Teachers Union v. Bd. of Educ.*, 476 Fed. App'x 83, 84-85 (7th Cir. 2012). The Board and CTU later entered into a settlement agreement in November 2012, and the case was dismissed with prejudice under that agreement. *See* 10 C 4852, R. 174.

## 2. Plaintiffs' Claims Not Barred by Claim Preclusion

As noted above, for the Board to win on claim preclusion, the Board must establish (1) identity of the claim (that is, the prior case and this case arises from the same facts); (2) identity of the parties, which includes those in "privity" with one of the parties in the first case; and (3) a final judgment on the merits. *Ross*, 486 F.3d at 283. Although Plaintiffs argue (plausibly) that none of the requirements has been met, it only takes one missing element to defeat claim preclusion, and here the Board fails to establish that the Plaintiffs were in "privity" with the CTU for purposes of claim preclusion. This is an important requirement: a "basic premise of preclusion law" is that "[a] court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (citation omitted). Sure, class actions can bind class members who themselves are not

8

named parties, but the Supreme Court has rejected the idea of a "'common-law kind of class action'" outside the class-protective requirements of Federal Rule of Civil Procedure 23. *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008) (quoting *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 972 (7th Cir. 1998)) (internal quotation mark omitted). Here, the CTU suit was not a class action, so the current Plaintiffs cannot be precluded on that basis.

Against this, the Board argues that, in the first suit, the CTU had "associational standing" to represent Plaintiffs, and thus Plaintiffs can now be tagged with having brought the first suit. Price Def.'s Br. at 12. In support, the Board cites four cases, *id.*, but those cases actually demonstrate why the Board's privity argument is wrong. At the very most, the CTU can represent Plaintiffs in collective bargaining and contractual matters (and potentially bind them for claim-preclusion purposes) because there is actual legal grounding for that representation. That is as far as the Board's cited cases go, to the extent the cases even analyze the issue. *Majeske v. City of Chicago*, 1998 WL 312016, at *6 (N.D. Ill. June 4, 1998) (without citation or analysis, stating that union members were in privity with union; but the case involved a collective bargaining agreement dispute); *Horan v. City of Chicago*, 2002 WL 338160, at *3 & n.1 (N.D. Ill. Mar. 4, 2002) (plaintiffs did not dispute that they were in privity for purposes of claim preclusion); *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1268 (5th Cir. 1990) (saying in dictum that a union can bind its members when the union acts

in "representative capacity" (citations omitted));[2] *UAW v. Acme Precision Products*, 515 F. Supp. 537, 540 (E.D. Mich. 1981) (collective bargaining dispute). In contrast, here, the current Plaintiffs assert individual due-process claims (and in *Ferkel* and *Smith*, other individual claims too) that are not premised on a collective bargaining agreement, and indeed seek individual monetary damages awards that the CTU did not and could not seek. The Board's claim-preclusion argument is rejected.[3]

## B. Due Process Claim

Although Plaintiffs clear the claim-preclusion hurdle, on the merits their due process claims fail because Plaintiffs have failed to identify a protected property interest entitling them to procedural due process before being laid off. Plaintiffs allege that, as tenured teachers, they had a property interest in continued employment and were entitled to be considered for open, alternative, or even temporary positions in the CPS system before being laid off. Plaintiffs also argue that, by summarily dismissing them without providing these individualized hearings, the Board violated their rights to procedural due process. Although these allegations are distinguishable from the due process claims asserted in the CTU case (here, Plaintiffs are asserting a right to *pre-*

---

[2]The two cases that *Meza* cited for this proposition also involved collective bargaining or bargaining unit disputes. *See Acree v. Air Line Pilots Ass'n*, 390 F.2d 199, 202 (5th Cir. 1968) (bargaining unit dispute, and first suit also sought individual damages awards); *Panza v. Armco Steel Corp.*, 316 F.2d 69, 70 (3d Cir. 1963) (per curiam) (collective bargaining agreement dispute).

[3]Issue preclusion also does not apply: nothing in the district-court injunction or the Seventh Circuit opinion (both of which were vacated) decided the pre-lay-off procedure claim that Plaintiffs bring now.

rather than *post*-layoff hearings), their claims nonetheless fail because they have not identified a state-law basis for this alleged property interest.

To prevail on a claim for the deprivation of property without due process, a plaintiff must establish that she holds a protected property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (citations omitted). Property interests are not created by the Constitution, but instead are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (internal quotation mark and citations omitted). So the federal Constitution will *protect* property from government deprivations without due process, but the federal Constitution does not *create* the property interest.

Property interests may arise by way of statutes, regulations, municipal ordinances, or by way of an express or implied contract, such as "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Covell v. Menkis*, 595 F.3d 673, 675-76 (7th Cir. 2010) (quotation marks and citation omitted). An individual has a property interest in a benefit if she has more than an "abstract need" for, or "unilateral expectation" of, that benefit. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). In other words, the individual must have a legitimate claim of entitlement to it. *Id.* In the employment context, a property interest exists "when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met." *Buttitta v. City of Chicago*, 9 F.3d 1198, 1202 (7th Cir. 1993) (quotation mark and citation omitted). Once a court

determines that an individual holds a property interest protected by the Due Process Clause, the question becomes what process is due. *Loudermill*, 470 U.S. at 541.

Here, Plaintiffs assert that their status as tenured teachers under section 34-84 of the Illinois School Code gave them a property interest in continued employment, which in turn entitled them to individualized hearings on whether they were qualified to fill vacancies within the CPS system before being laid off under section 34-18(31) of the Illinois School Code. 105 ILCS 5/34-84; 105 ILCS 5/34-18(31). But neither of these provisions, individually or in combination, gives rise to a protected property interest.

### 1. Section 34-84

Section 34-84 of the Illinois School Code outlines the procedure by which a teacher achieves tenure, and provides, in pertinent part:

> Appointments and promotions of teachers shall be made for merit only, and after satisfactory service for a probationary period . . . appointments of teachers *shall become permanent*, subject to removal for cause in the manner provided by Section 34-85.

105 ILCS 5/34-84 (emphasis added). Section 34-85, in turn, sets forth the process for removing a tenured teacher for cause, including written notice of charges and a hearing. 105 ILCS 5/34-85. Thus, under Illinois law, tenured teachers may not be terminated from their jobs except for good cause. But that deals with terminating employment on some *performance*-based ground; section 34-84 says nothing about a tenured teacher's immunity from economic *layoff*, a distinction that the Illinois Supreme Court has adopted. Sections 34-84 and 34-85's provisions for tenure and removal do not exempt tenured teachers from being laid off; that is, a tenured teacher

does not have a property interest in absolute continued employment that shields her from layoff decisions. *Land v. Bd. of Educ.*, 781 N.E.2d 249, 256 (Ill. 2002). This is because a termination is qualitatively different from a layoff. While a discharge for cause is associated with "shortcomings or deficiencies" in an employee's actual job performance, *Calumet City Prof'l Firefighters Ass'n. v. Stefaniak*, 612 N.E.2d 29, 32 (Ill. App. Ct. 1993), and has an "adverse effect upon [the teacher's] prospects for future employment," *Powell v. Jones*, 305 N.E.2d 166, 171 (Ill. 1973), a layoff is unrelated to actual job performance. *See id.* Rather, a layoff customarily occurs as the result of such outside forces as economic decline, reorganization, or the abolition of job duties. *Land v. Bd. of Educ.*, 757 N.E.2d 912, 920 (Ill. App. Ct. 2001), *rev'd on other grounds by* 781 N.E.2d 249, 261 (Ill. 2002). Thus, notwithstanding the restrictions that sections 34-84 and 34-85 place on the Board's power to discharge tenured teachers, the Board retains discretion to lay off employees—even those who have achieved tenure status—in good faith for lack of work or to save money. *Perlin v. Bd. of Educ.*, 407 N.E.2d 792, 796 (Ill. 1980) (citations omitted). The text of sections 34-84 and 34-85 does not mention giving tenured teachers immunity from layoff.

The Illinois Supreme Court made a similar observation in *Chicago Teachers Union v. Board of Education*, 963 N.E.2d 918 (Ill. 2012), the opinion that answered the certified questions from the Seventh Circuit in the CTU lawsuit. There, in determining whether section 34-84 of the School Code gives laid-off tenured teachers a substantive right to be rehired after an economic layoff, the Illinois Supreme Court noted that the 1995 amendment to section 34-84, which removed language providing for the retention

13

of "reserve teachers" whose positions were eliminated for reasons other than good cause, reflected a clear legislative intent to change the statutory rights of tenured teachers in a layoff. *Id.* at 925. Specifically, the Illinois Supreme Court held that the "General Assembly's removal of layoff and recall procedures from section 34-84 eliminated any substantive right arising from section 34-84 for tenured teachers to be rehired after a layoff." *Id.*

Plaintiffs contend, however, that the Illinois Supreme Court's holding in the CTU case is limited to the narrow question of whether section 34-84 gives tenured teachers any substantive rights *after* an economic layoff. But the Illinois Supreme Court's rationale remains just as applicable in the pre-layoff context as it does in the post-layoff context. Section 34-84 simply says nothing about a tenured teacher's substantive rights vis-a-vis an economic layoff, and the fact that the General Assembly amended the statute to eliminate all reference to layoff and recall procedures is indicative of its intent to leave such matters to the Board's sound discretion. Accordingly, there is no basis in section 34-84 for finding a property interest in continued employment that gives laid-off tenured teachers a right to a pre-layoff hearing.

## 2. Section 34-18(31)

Plaintiffs' efforts to find a protected property interest in section 34-18(31) of the School Code also fall short. Plaintiffs assert that the Board deprived them of their property interest by failing to comply with the requirements of section 34-18(31) of the Illinois School Code. Section 34-18(31) provides that the Board shall have power:

> To promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees, including, but not limited to, criteria for such layoffs, reductions in force or recall rights of such employees . . . . Such criteria shall take into account factors including, but not limited to, qualifications, certifications, experience, performance ratings or evaluations, and any other factors relating to an employee's job performance[.]

105 ILCS 5/34-18(31). Section 34-18(31) cannot give rise to a property interest and right to some sort of pre-layoff procedure because it is simply an authorizing or enabling statute that gives the Board the power to promulgate layoff or recall procedures. *Chicago Teachers Union*, 963 N.E.2d at 925. Indeed, the Illinois state legislature intended "merely to confer a power which the Board could exercise or not, as it saw fit." *Id.* According to the plain language of the statute, *if* the Board were to decide to exercise its promulgating powers, then the Board must consider such factors as the teachers' "qualifications, certifications, experience, performance ratings or evaluations." 105 ILCS 5/34-18(31). But where, as here, the Board declines to exercise its power to issue those rules, section 32-18(31) gives tenured teachers no statutory or substantive right to individualized consideration before layoff. In other words, the Board cannot be held in non-compliance of section 32-18(31) where it has not promulgated rules governing the layoff of employees, because the criteria laid out in section 32-18(31) only apply if and when the Board acts on its rule-making authority.

The Illinois Supreme Court's decision in the CTU case is again instructive. There, the state high court addressed whether section 34-18(31) gives laid-off teachers a right to recall procedures *after* a layoff. *Chicago Teachers Union*, 963 N.E. at 926. The Illinois Supreme Court answered "no." Looking to the plain language of the

statute, the opinion emphasized that the mandatory legislative factors outlined in section 34-18(31)—that the Board consider "qualifications, certifications, experience, performance ratings or evaluations, and any other factors relating to an employee's job performance" when making layoff decisions—do not give teachers a right to recall procedures. *Id.* Rather, the only thing the statute provides is that "*if* the Board promulgates recall procedures, it will take into account factors that include qualifications, experience, and 'any other factors relating to an employee's job performance.'" *Id.* at 927 (emphasis in original) (citation omitted). The Illinois Supreme Court thus concluded that there is no reasonable basis for inferring a statutory right to recall procedures from the bare fact that the Board will consider these factors when promulgating recall and layoff procedures. *Id.*

Just as section 34-18(31) cannot provide a basis for a post-layoff right to recall, so, too, is it an inadequate basis for a *pre*-layoff entitlement to an individualized hearing. This is because section 34-18(31)'s language is no more mandatory in requiring the Board to promulgate layoff procedures in the pre-layoff context than it is in the post-layoff context. Plaintiffs again argue that the temporal distinction between their claims and the claims presented in the CTU case renders the Illinois Supreme Court's decision inapplicable, but they have failed to articulate a persuasive reason why that is so. Accordingly, this Court finds that section 34-18(31) does not create a constitutionally protected property interest in continued employment that entitles tenured teachers a right to pre-layoff hearings.

This conclusion is further supported by the Illinois Appellate Court's decision in *Land v. Board of Education*, 757 N.E.2d 912. There, a group of laid-off tenured teachers brought a due process claim against the Chicago Board of Education alleging that section 34-18(31), along with the Board's layoff policy, created a property right to continued employment requiring that they be afforded a hearing before being laid off. *Id.* at 924. The Board there had adopted, pursuant to section 34-18(31), a layoff policy requiring that a tenured teacher receive notice before an economically-driven removal (that is, not a removal for cause but a personnel decision made for lack of work or purposes of economy). *Id.* at 915. Once removed, the teacher was designated "reassigned," and was given 10 months to find permanent employment at another school; if she was unable to secure permanent employment within that time period, the teacher was laid off and honorably terminated. *Id.* The facts of *Land* are slightly different from the case at hand in that there, the Board *did* promulgate a layoff policy pursuant to section 34-18(31). But even then the Illinois Appellate Court still held that neither section 34-18(31) nor the Board's layoff policy created a property right to continued employment that entitled tenured teachers to plenary pre-layoff hearings. *Id.* at 925. The court reasoned that the distinction between discharges "for cause" and layoffs demanded that the procedural protections required by due process be different for about-to-be-laid-off employees than for about-to-be-discharged employees. *Id.* To require the Board to give an about-to-be-laid-off tenured teacher a plenary pre-layoff hearing would "hang an anvil around the Board's collective neck," and obliterate the distinction between layoffs and discharges for cause. *Id.*

*Land* serves as a helpful guidepost because it is the only decision that interprets a tenured teacher's property interest with regard to a *pre*-layoff hearing under section 34-18(31). That the court found no property interest under both section 34-18(31) *and* the layoff policy promulgated pursuant thereto supports this Court's conclusion that section 34-18(31), standing alone, also fails to give rise to a protected property interest.[4] And while it is true that *Land* is only an appellate court decision, the Illinois Supreme Court held in the CTU case that section 34-18(31) does not give rise to a protected property interest in a *post-layoff* hearing, and Plaintiffs cannot meaningfully distinguish that decision from the current case. Accordingly, section 34-18(31) does not create a property interest in continued employment, and does not give tenured teachers a right to individualized hearings before an economic layoff.

Against this specific analysis of particular state laws, Plaintiffs stake their case on *Mims v. Board of Education*, 523 F.2d 711 (7th Cir. 1975), arguing that their status as tenured teachers is enough to give rise to a federal procedural right to be considered for vacant positions before or at the time of layoff. *Smith* R. 41, Smith Sur-reply at 5; *Ferkel* R. 29, Ferkel Resp. Br. at 5; *Price* R. 69, Price Resp. Br. at 4. In *Mims*, a group of female civil service employees of the Chicago Board of Education were laid off because of a shortage of funds. After learning that six men were hired to temporarily fill their positions, the laid-off employees sought an opportunity to demonstrate their

---

[4]This is the very conclusion reached in *Shegog v. Board of Education*, 2000 WL 555504, at *2-3 (N.D. Ill. May 4, 2000) (holding that section 34-18(31) alone does not give rise to a property interest in continued employment because the statute "does not establish substantive predicates to limit [Board] discretion").

qualifications. *Id.* at 713-14. The plaintiffs claimed that they had a property right to continued employment, and thus the Board was required to provide a statement of reasons and an opportunity to be heard before laying off the employees. *Id.* at 714. The Seventh Circuit agreed. *Mims* noted that although "a layoff is less drastic than a discharge and may not require all the procedural safeguards necessary before termination through discharge . . . [the laid-off] plaintiffs had a property interest in their continued employment, not just in their status as civil servants." *Id.* at 715 (citations omitted). The Seventh Circuit held that the plaintiffs were at least entitled to an opportunity to demonstrate that they were capable of performing the work assigned to the six temporary male employees, and that the Board had failed in its duty to establish a procedure by which an employee could obtain review of a layoff decision to ensure that it was not for an impermissible reason. *Id.*

Without referencing any state law that gives rise to a protected property interest, Plaintiffs now cite to *Mims* for the proposition that laid-off employees have a federal procedural right to a pre-layoff hearing simply by virtue of their tenure status. This reads too much into *Mims*. That case does not stand for the proposition that there is a free-floating property interest in continued employment that need not be grounded in specific state laws, nor does *Mims* purport to carve out an exception to the well-established rule that the federal Due Process Clause only applies where state law gives rise to a protected property interest. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 771 (2005) (Souter, J., concurring) ("[T]he federal process protects the property created by state law."). Although *Mims* did not identify the state-law source

of the property interest, that does not mean a state-law basis did not exist. Indeed, *Mims* relied on the Illinois Supreme Court's decision in *Powell v. Jones*, 305 N.E.2d 166, another case involving civil service employees. In turn, *Powell* made clear that the rights of civil service employees were derived (at that time) from the Civil Service Commission Rules and Personnel Development Rules promulgated pursuant to a former version of the Civil Service Commission Personnel Code. *Powell*, 305 N.E.2d at 170. Accordingly, the property rights of the plaintiffs in *Mims* were based on state law that applied to an entirely different category of public employees, and are distinguishable from this case. Without identifying a state law on which to ground a protected property interest in continued employment, the Plaintiffs cannot claim any right to the procedural protections of the Due Process Clause, and thus have no right to individualized hearings on whether they are qualified to fill existing CPS vacancies before layoff.

## IV. Conclusion

For the reasons discussed above, the Board's motions to dismiss Plaintiffs' due process claims are granted in each of the three pending cases. Price's complaint is dismissed in its entirety, but Smith and Ferkel have alleged additional claims for race discrimination, age discrimination, and common-law breach of contract. Smith Compl. at 6-9; Ferkel 1st Am. Compl. at 10-12, 13-15. These remaining claims shall move forward. The *Smith* and *Ferkel* parties shall be prepared to discuss the remaining

claims and their discovery plan at the next status hearing, which is already set for May 21, 2013 at 10:30 a.m.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: May 8, 2013